UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BRIAN R., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. ED CV 19-02381-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I.  INTRODUCTION

Brian R. ("Plaintiff") filed an application for Supplemental Security Income on November 16, 2016, alleging disability beginning November 1, 2013. See Dkt. 16, Administrative Record ("AR") 258-71.[1] After being denied benefits initially and on reconsideration, see AR 103, 115, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on November 28, 2018, see AR 41-91.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

The ALJ issued an unfavorable decision on February 14, 2019. See AR 14-36. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. See AR 19. At step two, the ALJ determined that Plaintiff had the severe impairments of "cervical strain and degenerative disc disease/osteoarthritis of the cervical spine with a history of cervical surgery and fusion in August 2017; minimal osteoarthritis/mild degenerative disc disease of the lumbar spine; minimal osteoarthritis of the thoracic spine; chronic migraine and occipital neuralgia; osteoporosis; and rheumatoid arthritis." AR 20. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 22.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with some limitations. See id. At step four, the ALJ found that Plaintiff could perform his past relevant work as a real estate agent (DOT 250.357-018) as actually and generally performed. See AR 28-29. Accordingly, the ALJ denied benefits. See AR 29.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. This action followed. See Dkt. 1.

## II.   LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only when the ALJ decision is "based on legal error or not supported by substantial evidence in the record." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted).

### III. DISCUSSION

The parties dispute whether the ALJ erred in (1) determining Plaintiff's RFC and (2) evaluating his subjective symptom testimony. See Dkt. 21, Joint Stipulation ("JS") at 4.

### A. RFC

Plaintiff argues that the ALJ failed to consider relevant and substantial medical evidence of record in assessing his RFC. See JS at 4-10.

The RFC "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ must assess a claimant's RFC "based on all the relevant medical and other evidence." Id. § 416.945(a)(3). It is ultimately an administrative finding reserved to the Commissioner. See id. § 416.927(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."). A district court must affirm the ALJ's determination of a claimant's RFC if the ALJ applied "the proper legal standard" and "his decision is supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, the ALJ found that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b) except that he could:

> frequently balance; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch and crawl; never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous moving machinery parts; can work in a moderate noise environment; and can have occasional exposure to lighting as bright as direct sunlight.

AR 22.

Plaintiff contends that the ALJ failed to consider the effect of his migraine headaches and upper extremity impairments in determining his RFC. See JS at 4-5. In so arguing, Plaintiff takes a shotgun approach of cataloging several years of medical evidence (mostly unrelated to either headaches or his upper extremities) without identifying what evidence the ALJ failed to consider or how it would specifically necessitate a more restrictive RFC. When interpreting the evidence and developing the record, "the ALJ does not need to discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation and internal quotation marks omitted). At best, Plaintiff has offered an alternative interpretation of the record, which is an insufficient basis for reversal. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Regardless, the Court finds that the ALJ's RFC is supported by substantial evidence. With respect to Plaintiff's migraines, the ALJ noted a history of migraines since childhood but that CT scans of the brain have been negative. See AR 26 (citing AR 407-11). The ALJ then went through several years of treatment records, which indicated that although Plaintiff often complained of headaches and accompanying pain, physical examination and diagnostic findings were generally unremarkable. See AR 26-27 (citing AR 382-86, 439, 443). Considering that evidence, the ALJ accommodated Plaintiff's migraines and occipital neuralgia by limiting his exposure to noise level and bright lights. See AR 22. Plaintiff does not say why those limitations are inadequate or what greater limitations are required.

As to Plaintiff's upper extremities, the ALJ noted that in mid-2017, Plaintiff complained of hand and arm pain, and that physical examination findings included decreased sensation in the C6 and C7 dermatomes of the

right hand. See AR 25. Plaintiff's orthopedic surgeon, Dr. Rajiv Puri, assessed severe degenerative disc disease at C4-5, C5-6, and C6-7, with radicular pain to the right arm and neurological deficit, and recommended surgical fusion. See id. (citing AR 497, 560-61). After surgery, Plaintiff reported "feeling better as far as his arm pain is concerned, though he still had pain in the back of the neck and shoulders." AR 502. In October 2017, Dr. Puri noted that Plaintiff's arm symptoms were "much better" than before the surgery, and neural examination of the upper extremities was normal. AR 506.

Plaintiff also argues that the ALJ ignored his diagnosis of rheumatoid arthritis ("RA"). See JS at 6-8. To the contrary, the ALJ explicitly noted that Plaintiff's rheumatologist, Dr. Bikramjit Ahluwalia, assessed RA in May 2018 based on mild to moderate swelling of the bilateral metacarpophalangeal joints. See AR 27 (citing AR 664-65). Plaintiff submitted post-hearing treatment records in January 2019, which indicated that he had not needed to see an RA specialist since his May 2018 diagnosis, and that his treating physician did not address RA except to note the diagnosis. See AR 625 ("[P]atient has self reported Rheumatoid Arthritis."). The ALJ observed that, while there might come a time that Plaintiff's RA symptoms were so insufficiently controlled that additional limitations (e.g., restrictions on Plaintiff's use of his hands) might be required, the evidence at the time of the ALJ's decision was inadequate to support such restrictions. See AR 27. Plaintiff points to no RA-related treatment records commanding a different result.

Accordingly, the ALJ did not err in determining Plaintiff's RFC.

**B.    Subjective Symptom Testimony**

    **1.    Testimony**

At the hearing, Plaintiff testified as follows. Plaintiff has had cervical pain since he injured his neck in 2003 or 2004. Plaintiff's condition worsened

after he was involved in a motor vehicle accident in May 2015. He had neck surgery in August 2017, which fixed two of his discs, but there was a problem with the third disc. He has problems with cervical range of motion and pain, and experiences numbness in his upper extremities about 40% of the time, right worse than left. His neck is his biggest obstacle preventing him from working. He has headaches due to his cervical issues, which are sometimes triggered by noise or bright lights. He was recently diagnosed with severe RA. Plaintiff takes Norco, Gabapentin, and Flexeril for pain. Plaintiff uses a cane to get up and down from sitting. He can sit for 40 minutes, stand for 15-20 minutes, and lift 10-15 pounds, but cannot carry things.

Plaintiff spends most of his time watching television and reading. He does not help with household chores but is able to drive for 30 to 40 minutes. Prior to his August 2017 surgery, Plaintiff was physically inspecting properties and doing real estate paperwork for his mother. After the surgery, he reviewed paperwork for a few hours a week, and stopped working altogether when his mother retired and no longer owned the real estate business.

### 2. Law

The ALJ must make two findings before finding the claimant's pain or symptom testimony not credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (citation omitted). Second, if the claimant has produced that evidence, and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). If the ALJ's subjective symptom finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

### 3. Analysis

The ALJ concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 23-24. Specifically, the ALJ found that Plaintiff's statements were inconsistent with (1) the objective medical evidence and (2) his work activity. See id.

First, the ALJ found that the medical evidence as a whole did not support Plaintiff's alleged limitations. This finding is supported by substantial evidence. The ALJ went through each of Plaintiff's severe impairments, noting that the physical examination and diagnostic findings did not support, or were inconsistent with, Plaintiff's subjective symptom testimony. See AR 24-27.

Plaintiff argues that it "should be remembered" that he underwent a multi-level cervical discectomy and fusion with cage implantation in August 2017. JS at 14. The ALJ, however, discussed Plaintiff's surgery at length. The ALJ noted that post-surgery, Plaintiff's neck and arm were doing much better, although he still had some back pain. See AR 25-26. Plaintiff also notes that two treating orthopedic surgeons have suggested that he might need additional surgery on his lumbar spine. See JS at 14. Plaintiff does not explain, however, how suggestions of hypothetical, future surgery undercut the ALJ's findings.

Plaintiff also argues that lack of supporting objective evidence cannot form the sole basis for discounting symptom testimony. The Court does not

disagree, but it is a relevant factor for the ALJ to consider. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ's thorough cataloging of objective medical evidence that was inconsistent with Plaintiff's subjective complaints was thus a valid factor weighing in the ultimate credibility finding.

Second, the ALJ found that Plaintiff's work activity undermined his subjective symptom statements. Specifically, the ALJ noted that Plaintiff worked at his mother's real estate business through 2017, four years after the alleged disability onset date, and even after that. See AR 24. An ALJ can discredit a claimant's subjective pain testimony if they participate in "activities indicating capacities that are transferrable to a work setting." Molina v. Astrue, 374 F.3d 1104, 1113 (9th Cir. 2012); see also Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (affirming the ALJ's adverse credibility finding where the claimant "recently worked [part-time] as a personal caregiver for two years, and has sought other employment since then").

Plaintiff does not challenge this finding, which is supported by substantial evidence. Plaintiff testified that until his 2017 surgery, he spent two to four hours a day, five days a week, physically inspecting properties and doing real estate paperwork:

> [ALJ]: So, during the time between 2013 and 2017 when you were still doing appraisal work were you doing like any of the actual—the walking through the house inspections, looking to attics or looking into basements, taking out a measuring tape, measuring square footage; any of that kind of work?
> [Plaintiff]: Yes, I was.
> [ALJ]: Okay. All right. In an average week how many hours were you spending doing that?

[Plaintiff]: Maybe 20.

AR 76-78. After his surgery, Plaintiff continued to spend a few hours a week doing paperwork, stopping only when his mother retired and no longer owned the real estate business. See AR 79. That Plaintiff was able to able to work in this capacity for several years past his alleged onset date formed a valid basis for discrediting his subjective symptom testimony. See Carter v. Astrue, 472 F. App'x 550, 552 (9th Cir. 2012) (affirming the ALJ's adverse credibility finding where the claimant "worked part-time for nearly another year after his alleged disability onset date").

Accordingly, the ALJ gave clear and convincing reasons in support of the adverse credibility finding.

## IV. CONCLUSION

The decision is the Social Security Commission is affirmed and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date: October 13, 2020

DOUGLAS F. McCORMICK
United States Magistrate Judge